# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DONALD WILHELM, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:19-CV-00180-JAR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Movant Donald Wilhelm's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. No. 1). For the following reasons, Wilhelm's motion will be denied.[1] Also pending is Wilhelm's motion to expedite ruling (Doc. No. 14), which is denied as moot.

## I. Background

On August 31, 2016, a federal grand jury charged Wilhelm in two counts of a nine-count indictment with conspiracy to possess pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(1) and 846; and possession of pseudoephedrine with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1). *United States v. Donald Wilhelm*, 4:16-CR-00393-JAR ("criminal case"), Crim. Doc. No. 1.[2]

---

[1] Because Wilhelm's motion can be conclusively determined based on the motion, files and records of the case, an evidentiary hearing need not be held. *See Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).

[2] All references to filings made in the underlying criminal matter will be cited as "Crim. Doc. No."

1

On November 1, 2016, defense counsel filed a motion to suppress evidence on behalf of Wilhelm, arguing that the search warrant executed on his residence violated Wilhelm's Constitutional rights because the application supporting the warrant lacked probable cause and contained false statements and omissions. Crim. Doc. No. 123. The affidavit in support of the search warrant described the property and vehicles anticipated to be on the property to be searched. The affidavit specified that the location "includes the entre premises and curtilage...and any and all persons present, arriving or leaving said premises." Affidavit, Crim. Doc. No. 164-1. The search warrant issued described the property to be seized as follows:

> ... instruments, articles, items, and things which have been used in the commission of, or which constitute evidence of, the offense delivering, manufacturing a controlled substance RSMO 195.211, possession of controlled substance RSMO 195.202, and/or maintain a public nuisance RSMO 195.130. Specifically, but not limited to methamphetamine, controlled substances, packaging material, measuring devices, scales, drug paraphernalia, currencies, cell phones, electronic digital recording devices, cameras, computers, and phones records.

Warrant, Crim. Doc. No. 168-1. The affidavit in support of the Warrant set forth the following facts. On July 12, 2015, a confidential source, who had known Wilhelm since childhood, smelled a strong odor of ether and anhydrous ammonia coming from the direction of Wilhelm's home. The confidential source's car had gotten stuck in the mud approximately 100 feet west of Wilhelm's home, and he was confronted by two male subjects, who told the confidential source to "get the hell out of here." The confidential source knew Wilhelm to be a methamphetamine "cooker," and the confidential source was familiar with the smells coming from Wilhelm's home because he had experience in agriculture.

2

In the motion to suppress evidence, Wilhelm's counsel argued that the application failed to provide information concerning the reliability and any corroboration or criminal history of the confidential source referenced therein. Counsel then moved for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks* hearing") regarding the statements made by the confidential source and intentionally false and misleading statements supporting the search warrant.

On March 14, 2017, the presiding Magistrate Judge held an evidentiary hearing on Wilhelm's motion, at which Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") David Riffer testified. Thereafter, the Magistrate Judge recommended denial of the motion to suppress, holding that the confidential source's information was reliable because it was based on first-hand observations, and there was no evidence that TFO Riffer knowingly or intentionally entertained serious doubts as to the truth of the confidential source's statements. Crim. Doc. No. 230. She further held that the affidavit described the residence "accurately" and "with particularity." The Magistrate Judge concluded that there was sufficient probable cause for the issuing judge to sign the warrant to search Wilhelm's residence.

On July 4, 2017, Wilhelm's counsel filed objections to the Magistrate Judge's decision, reiterating that the search warrant lacked probable cause. Crim. Doc. No. 240. This Court then conducted a "*de novo* review of the matter" and held that the Magistrate Judge's conclusions were supported by the evidence, and Wilhelm's objections were "not persuasive." Crim. Doc. No. 257.

On November 7, 2017, Wilhelm appeared before the Court for a change of plea hearing and pled guilty to Count Two of the indictment. Crim. Doc. No. 309. At his plea hearing, Wilhelm acknowledged, under oath, that the following facts were true and correct:

In February of 2013, the Macon County Sheriff's Office received information that individuals including co-defendant Timothey McKinzie and defendant Donald Wilhelm were manufacturing methamphetamine in a trailer home in Atlanta, MO. Investigators checked NPLEX records and saw that the individuals had recently purchased pseudoephedrine.

On August 4, 2015, North Missouri Drug Task Force and Macon County Sheriff's Office served a search warrant at the residence of defendant Donald Wilhelm located at 34000 block of Mesquite St. While serving the warrant, officers located Wilhelm behind his home carrying a bucket with components of a methamphetamine lab, including:

> a grinder, coffee filters, a blue plastic funnel, plastic tubing, a coffee can with a false bottom containing methamphetamine and a pipe, a clear plastic container with waste, a bottle of liquid fire, a glass jar, two glass pipes with residue, glass jar with Coleman camp fuel and lithium, a large plastic bag with separate plastic bags with foil and a set of digital scales made to look like a cd case. Items in the bottom of the coffee can field tested and came back positive for methamphetamine.

A search of the residence revealed:

> In living room: a container of denatured alcohol, a Ruger .22 cal. Rifle serial #245-55195, a Ruger Mod .45 .22 caliber pistol serial number 223-37-388, set of old scales, five packages lithium batteries, black pouch with methamphetamine (field tested positive) in multiple containers and baggies. The gun safe contained: a .22 magnum Marlin 09531792, a Ruger M77 Mk 2 .270 caliber file serial number 78154055, a New England Arms .20 gauge NF385732, Winchester Model 67 .22 caliber rifle (no serial #), a Marlin Model 25 .22 caliber serial #16705123, a Stevens Model 770 .20 gauge 780755, a Llama .45 caliber 07-04-06872-99 pistol, ammunition, and $975 cash.

> In bedroom closet: a Colt .38 caliber serial number 895183, a Ruger Mk2 .22 caliber serial #219-91-967.

Marcy Stiefel from the Missouri the Missouri State Highway Patrol labs tested items:

> 2. 1-powder weighing .41 grams contains methamphetamine, a Schedule II controlled substance

4

> 3. 1-powder weighing 1.55 grams contains methamphetamine, a Schedule II controlled substance
> 4. 1-powder weighing .11 grams contains methamphetamine, a Schedule II controlled substance
>
> Co-defendant Rory Walker was interviewed and admitted to buying boxes of pseudoephedrine for defendant Donald Wilhelm and witnessed co-defendant Angelia Jackson doing the same. A cooperating witness was interviewed by officers and provided a list of names of those involved with purchasing and providing pseudoephedrine in exchange for methamphetamine. Defendant Wilhelm was seen in person on multiple occasions at his home and other locations in Macon County area trading methamphetamine in exchange for pseudoephedrine. Defendant Wilhelm also sold methamphetamine for cash. Defendant Wilhelm would periodically allow co-defendants to stay with him for 3-4 days at a time at his home. Defendant Wilhelm was also witnessed cooking methamphetamine at his home.
>
> A review of NPLEX records shows that defendant Wilhelm purchased 113.76 grams of pseudoephedrine between June of 2013 and the date of indictment. Further, many of defendant Wilhelm's purchases of pseudoephedrine took place on either the same date or in close proximity in time to many of the co-defendants. Defendant Wilhelm acknowledges through his plea that he possessed the 113.76 grams of pseudoephedrine with the intent to manufacture methamphetamine.

Guilty Plea Agreement, Crim. Doc. No. 310, ¶ 4.

The Government and Wilhelm further agreed that, with respect to the application of the United States Sentencing Guidelines ("U.S.S.G."), the Base Offense Level is 30, pursuant to Section 2D1.11(d)(6). The Government further recommended that two levels should be added for Wilhelm's possession of weapons, although Wilhelm reserved the right to object to the specific offense characteristic. Finally, the parties recommended that three levels be deducted for Wilhelm's acceptance of responsibility and that a variance may be appropriate based on a comparable penalty structure for methamphetamine. As a result, the parties agreed that with the variance, the Total Offense Level would be 23.

5

Pursuant to the Plea Agreement, Wilhelm agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea." *Id.* at ¶ 7. Wilhelm also agreed to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one filed under 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel. *Id.*

During the change of plea hearing, and while under oath, the Court closely examined Wilhelm regarding the voluntariness of his plea, and it determined that his plea was entered "freely, voluntarily, and intelligently." Plea Trans. at 22. Wilhelm indicated his understanding that he waived his right to appeal non-jurisdictional, non-sentencing issues, including any issue related to filing or not filing pretrial motions and discovery in the case. *Id.* at 19. He also confirmed the facts set forth in the Agreement and recited by the Government during the hearing were true and correct. *Id.* at 16. Wilhelm further indicated that he was satisfied with his defense attorney's representation, that he had been fully advised as to all aspects of the case, and that no promises were being made to him regarding his sentence. *Id.* at 5, 6, 18.

Thereafter, the United States Probation Office issued its Presentence Investigation Report ("PSR"), which added two levels to Wilhelm's Base Offense Level because "a dangerous weapon (including a firearm) was possessed." PSR, Doc. No. 354, at ¶ 36. On January 31, 2018, Wilhelm's counsel filed objections to the PSR, including an objection to this enhancement:

> Objection is made to the two level enhancement pursuant to U.S.S.G. § 2D1.11(b)(1). This Objection was contemplated by the parties as set forth in the Guilty Plea Agreement. (See Guilty Plea Agreement, Section Statutory Penalties (2)(a)(2), Page 6). Wilhelm does not deny that the firearms were found at this residence. However, at the time of the execution of the search warrant on

6

August 4, 2015, Wilhelm had no prohibitions from possessing these firearms. With the exception of two (2) firearms which Wilhelm acknowledges where in plain view, all of the remaining firearms were either in a gun safe or in cases. At no time during the execution of the search warrant was there any issue regarding danger to any of the individuals whom were located in the Wilhelm residence. Further, it must also be noted in Objection B, above, there were three (3) firearms seized by the State authorities that never were received by the Federal Government. The ruling on this Objection will, in fact, impact the calculations under the United States Sentencing Guidelines.

*United States v. Wilhelm*, Doc. No. 349.

On February 15, 2018, the Court held a sentencing hearing, at which time Wilhelm confirmed that he was satisfied with his counsel's representation and that she had done everything he had asked her to do in the case. Sentencing Trans. at 2-4. Then, Wilhelm raised his objection to the sentencing enhancement based on firearms, arguing that there was no nexus between the firearms and his possession of pseudoephedrine with the intent to manufacture methamphetamine. *Id.* at 10. He also stated that he lived in a rural area and needed the firearms for hunting and protection. *Id.* at 13.

The Court overruled Wilhelm's objection, holding:

I do understand that Mr. Wilhelm lives in a rustic setting, and I understand very well that someone living under those conditions in that setting having a firearm for protection is very logical, and probable, and expected. I would say that. So I don't disagree with any of that. As I indicated, I certainly understand with regard to the one weapon, it sounds more like a collector's item than a weapon. So I certainly accept that as true as well. The problem is is the scope and extent of the criminal activity in this case. He was engaged in a long-term process of manufacturing methamphetamine over a lengthy period of time. I understand that the two guns that we are talking about were in a locked safe, but that doesn't change the fact that they were there for multiple reasons. They may have very well have just been there for the reasons that you stated, but it is clear to me that the Government has shown by a preponderance of the evidence that they were there as well to provide protection, insure that he was safe from anyone who may want to steal the drugs and to protect the drugs. There is a clear nexus with the drug activity at that location.

*Id.* at 15-16. Wilhelm then confirmed that he had no other objections to the PSR.

7

Thereafter, the Court adopted the findings of fact and legal conclusions contained in the PSR and granted Wilhelm's motion for a variance, resulting in a guidelines range of 46 to 57 months imprisonment. The Court then sentenced Wilhelm to 46 months imprisonment, to be followed by a term of two years of supervised release.

Wilhelm filed a direct appeal of his sentence and conviction. On June 7, 2018, the Eighth Circuit enforced the appellate waiver contained in the Plea Agreement and dismissed Wilhelm's appeal. *United States v. Wilhelm*, 2018 WL 4355943 (8th Cir. 2018).

On February 4, 2019, Wilhelm filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, asserting the following claims: (1) counsel was ineffective for failing to allege that the search warrant was insufficiently particular, in violation of the Fourth Amendment; (2) counsel was ineffective for failing to appeal his two-level enhancement under Section 2D1.1(b)(1); and (3) the District Court abused its discretion when it denied Wilhelm's motion to suppress. (Doc. No. 1). The Government filed a response on March 13, 2019. (Doc. No. 5); Wilhelm filed a reply on August 26, 2019. (Doc. No. 14).

## II.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." It is well-established that a petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006); *United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009). The

burden of demonstrating ineffective assistance of counsel is on a defendant. *United States v. Cronic,* 466 U.S. 648, 658 (1984); *United States v. White,* 341 F.3d 673, 678 (8th Cir. 2003).

To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States,* 393 F.3d 749, 753 (8th Cir.), *cert. denied,* 546 U.S. 882 (2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Review of counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The court does not "second-guess" trial strategy or rely on the benefit of hindsight, *id.*, and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma–Rodriguez,* 423 F.3d 830, 836 (2005). If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins,* 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*

The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Anderson,* 393

9

F.3d at 753-54 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Williams v. U.S.*, 452 F.3d 1009, 1012–13 (8th Cir. 2006).

A court need not even determine whether a movant meets the "performance" prong of the *Strickland* test because both the United States Supreme Court and the Eighth Circuit Court of Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" *Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998); *see also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

### III. Discussion

#### a. Ineffective assistance of counsel for failing to allege the search warrant was insufficiently particular, in violation of the Fourth Amendment

Wilhelm first alleges that his counsel was ineffective for failing to challenge the search warrant as insufficiently particular, claiming that the warrant used "including but not limited to" language that rendered the search overbroad, cited to Missouri statutes that covered an overly-broad range of illegal activities, and included a "laundry list" of items to be searched by officers at their discretion. Upon review, the Court concludes that Wilhelm failed to meet his "heavy burden" to establish ineffective assistance of counsel because he cannot show that counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense. *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995).

10

Here, counsel challenged the search warrant on multiple grounds, and those arguments were presented to the Magistrate Judge and this Court. The motion failed on the merits. "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (citing *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999)). "The particularity requirement "is a standard of 'practical accuracy' rather than a hypertechnical one." *Id.* (citing *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996)).

Upon review, the Court concludes that the search warrant satisfies the particularity requirement of the Fourth Amendment. Use of the phrase "not limited to" and reference to specific Missouri statutes does not impermissibly expand the scope of a search warrant. *United States v. Martin*, 866 F.2d 972, 977 (8th Cir. 1989) (The description of "burglary tools, including but not limited to crow bars and vice grips" was as specific as the investigation could at that point permit, and sufficed to limit the search to the generic class of items sought."); *Milliman v. Minnesota*, 774 F.2d 247, 249-50 (8th Cir. 1985) (upholding a warrant authorizing a search "including but not limited to" records and other writings tending "to show the presence of [the defendant] . . . ."). Further, the list of items included in the search warrant were sufficiently limited to the class of items sought, in light of the particular circumstances of this case. Thus, Wilhelm has failed to establish prejudice as a result of counsel's failure to challenge the search warrant on grounds of particularity. Accordingly, this claim fails.

### b. Ineffective assistance of counsel for failing to appeal the sentencing enhancement for possession of a firearm during the commission of a crime

Next, Wilhelm argues that his counsel was ineffective for failing to raise on appeal the trial court's alleged error in imposing a sentencing enhancement for his possession of a firearm, arguing that the Government failed to establish a connection between the firearm and the crime. However, this claim fails because counsel did, in fact, argue on appeal that there was "[a]bsolutely no evidence presented" to support the enhancement. Appellant's Brief, *United States v. Wilhelm*, 2018 WL 2197418, at *14-15. Thus, Wilhelm cannot prevail on this claim because counsel did in fact raise the precise argument Wilhelm raises before this Court

Moreover, issues raised and rejected on direct appeal may not be re-litigated in a Section 2255 petition. *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Here, the Government moved to dismiss Wilhelm's appeal based on the appellate waiver contained in the Plea Agreement, and the Eighth Circuit granted the motion and dismissed the appeal. Accordingly, this claim is denied.

### c. The Court erred when it denied the motion to suppress

Wilhelm further argues that the Court abused its discretion when it denied his motion to suppress because the information supporting the search warrant was "stale" at the time that the warrant was issued. However, a guilty plea "waives all challenges to the prosecution either by direct appeal or collateral attack, except challenges to the court's jurisdiction." *Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988). Further, issues that could have been raised on appeal but were not, generally are considered procedurally defaulted and cannot be raised for the first time on a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Here, the Guilty Plea Agreement effectively waived all challenges to the Court's rulings

12

on the motion to suppress. Further, Wilhelm failed to raise this issue on direct appeal, and thus it is procedurally defaulted. This claim is denied.

**IV. Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Movant Donald Wilhelm's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's motion to expedite ruling is **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that this Court will not issue a certificate of appealability, as Miller has not made a substantial showing of the denial of a federal constitutional right.


Dated this 23rd day of December, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE